Tissue Technology v. TAK Investments Mr. Ganser May it please the court. My name is Michael Ganser. I'm from the Milwaukee law firm of Tershon, Steinle, Houghton & Ganser. I'm here representing the plaintiff appellants in this case, four companies that entered into an agreement with the defendant's appellate. There were a series of agreements that were consummated in April of 2007 to transfer ownership of the Oconto Falls Tissue Mill from the four plaintiff appellant companies to the defendant appellate. Depending on which version you accept, the transaction was valued at somewhere between $85 and $130 million. The deal was partially financed by a Goldman Sachs consortium and was further seller financed by a series of contracts. There are two other lawsuits pending in the state of Wisconsin related to these transactions. This part of the transaction, there was an agreement that there would be an interest in TAK Investments that would be delivered to the plaintiff companies upon the happening of various circumstances. Or, in the alternative, the notes would be paid. Or, if TAK Investments entered into a construction contract with an associated company for $300 million, these are family related businesses to the man who is then the principal of these four plaintiffs, then the notes would all be canceled because of the size of that subsequent contract. There were two separate summary judgment motions in this case. The first related to our demand for the issuance of the 27% interest in the TAK Investments LLC as contemplated by the agreement. That was denied by the district court. We were allowed then to replead. We did. Another round of summary judgment motions took place. They were denied on both sides. The matter was ultimately tried before the district court and the court ruled contrary to us, obviously, or we wouldn't be here. We believe, though, that the law of contracts strongly supports our position that we are entitled to the 27% or, alternatively, the value of the promissory notes. There are four main points that we're here to address. First, that their freedom to contract principles require validation of that first agreement, that first request. Second, that the promissory notes and questions, according to the district court, have no value. And we believe that that's a tortured view of what these notes represent, and we believe that the law requires that the court take a different approach and look to ways to enforce the contracts rather than to give them an unreasonable commercial meeting. Mr. Ganser, can I pause? Would you mind if I ask you a question about that point in particular? Yes. The district court, as I read its opinion, seemed to place a lot of emphasis on what it saw as a pretty clear business purpose behind the notes. And that was that the notes were created to clear an encumbrance upon the assets that were sold in the first instance. And by creating the notes and having the encumbrance lifted, the assets were able to be transferred free and clear of any lien. Is that correct? That is correct. And if that's right, doesn't the indemnification provision for shorthand in the final business terms agreement, doesn't it make a lot of sense? We don't believe it does. Why would there ever have been contemplation of payment on the notes if the business purpose as espoused by the district court is correct? Well, we disagree with what the district court said was the business purpose, and we think that it makes no sense. In many respects, I likened it to the Seinfeld episode, that these contracts are contracts about nothing, in effect. No, no, no. They're not about nothing. They allowed Mr. Vanden Heuvel to transfer those assets free of the encumbrance. That's true, but why would that be the case when, in fact, what could have happened is simply a forbearance by those creditors? I mean, why monetize the notes? Why say these notes are worth X, in each case a little bit different? Why assign an interest rate to the notes? Well, for that matter, I can come right back at you and say, why include the indemnification provision? I agree. I don't think that that made a lot of sense unless you look at it the way that I think it should be approached, and that is that the indemnification provision provided that the creditors, if they were to attack Mr. Tock, his company, Tock Investments, on the basis of those notes saying that, you know, you owe them and now you owe us, we've said we'll indemnify you for that. We'll make sure that that isn't going to happen. And so that's what the three-year period was about, that for three years we'll make sure that you're covered. See, our view on this is that the notes themselves, or the two documents when read together, provide that the mill transfers, okay, after three years then, why would the three-year period be in there otherwise, that the notes will either be paid when due or we can demand that the notes be canceled and Tock Investments would give us a 27% interest in the business. Of course, if our only purpose on this was to ensure that we could clear those creditors off and transfer the mill, then why would we have the 27% interest provision in the contract? It makes no sense otherwise. So, as I said, I understand what Judge Griesbach did, but I think that to give this a commercially rational business meaning, that you have to look at those contracts in terms of Tock has to owe something to the plaintiff companies in order for this to be a valid contract. Otherwise, what's the purpose? What's Tock giving up? Nothing. He's getting everything. Which, in fact, is what's happened here. Obviously, there was to be an encouragement of this $300 million contract that never took place, but even in that, what's the consideration? In this case, it was that Tock would owe us either a 27% interest or under the terms of the notes, but if he had done that, if he had entered into that $300 million contract, we wipe it clean. That's what the agreement says. So, you know, in many respects, what's the downside for Tock in entering into this agreement? It doesn't exist. There's no downside. Getting back to the 27% issue, which we think if that's ruled, if you rule in our favor as it relates to that, then the rest of this need not be addressed. But the law of contracts in the state of Wisconsin is premised upon the freedom to contract on the principle that individuals should have the power to govern their own conduct without government interference. Part and parcel to that is that a court can only refuse to enforce a contract where it has no doubt that it violates a statute, a rule of law, or public policy. In this case, the central issue in the first part of our argument is that the 27% provision should have been granted. We should have been given the 27% interest in Tock investments. It gets us to the central argument of the case, at least the first part. Can a limited liability company issue an interest in itself? The district court said no, relying on this Hanley v. Cusper case, an Illinois Supreme Court case from 1975. But a reading of that case shows that it's a tax case, that it relates to really whether a trust can be exempted from a tax, which I think is best termed a personal property tax. The court simply pointed out in that case that just as individuals can be taxed, so too can corporations, and that ultimately it's individuals who bear the brunt of that. The individuals are ultimately the ones that are taxed. That case, relied on both by the appellee and the district court, provides that they're claiming that it says that a limited liability company cannot agree to issue shares in itself. There's no law to support that. There's no public policy that says that. If in fact that should be the law, that's a job for the Wisconsin legislature. Well, hold on. Hold on on that point. Is there any dispute that TAC Investments LLC is a Delaware limited liability company? It is a Delaware company, correct. Okay. And why, therefore, if that's accurate, why wouldn't we look to the Delaware Limited Liability Company Act? I have, and there is nothing in the act there that is similar to the claims of the appellees. Let me ask you to react to something then. In Section 18301 of the Limited Liability Company Act, it's a provision that addresses the admission of members. So here you'd be talking about a new membership interest, and subsection B of that statute addresses a situation where new members come in after formation of the limited liability company. That's what you have here. And B1 specifically acknowledges that a person can acquire a limited liability company interest directly from a limited liability company. You know, quote, unquote. So doesn't that contemplate that it's lawful? It certainly does, Your Honor, as you've read that correct. So you talk about it in terms of we can't see anything that prohibits this. I'm suggesting there may be actually a provision of the Delaware Code that affirmatively authorizes it. And if that's the case, we would ask you to move forward on that basis and reverse the district court. Our position has always been that Wisconsin law doesn't... ...the authority of a limited liability company. Right, and our position was this, that the companies located in the state of Wisconsin, the jurisdiction is the state of Wisconsin, all of the transactions occurred in the state of Wisconsin. We did look at the Delaware limited liability law. We looked also at Maryland at one point because it was deemed that perhaps this was a Maryland company. But the truth of the matter is we focused our argument on the state of Wisconsin. As a result of what is clear, the freedom to contract and no prohibition and nothing that would... ...no rule of law or public policy was contrary to that. So in both cases, Your Honor, yes, we think the 27% should be awarded. So... ...one other aspect of this case, the third main argument that we've offered is the physical possession of the notes themselves. And what happened at the trial of this case is that two gentlemen testified. David Vanden Heuvel testified. He had two notes with him, and he testified. He was holding those two notes only as collateral. Brad Hutchins from the Nicolet Bank appeared as well, and he too said he was holding a note on behalf of the bank only as collateral. They've testified that upon payment of the debt, the note would revert back and that this was only being held as security. And of course, the UCC provides that there can be perfection of a security in a note by possession. In our case, what we've suggested is that the Wisconsin version of the UCC provides that an instrument can be owned by someone, offered as security, and held by another, and that's exactly what happened here. The fourth note in question was held by Associated Bank. That was paid off. It was not yet returned to the appellants at that point in time. Yet, as it relates to all four, and the district court said because we didn't have possession of those notes that we couldn't prosecute them, we believe that that's incorrect. To absolutely transfer would require an endorsement. There was no such endorsement here. And in fact, if actual possession of the notes indicated that they were not actually security, then the statute in question that provides that holding the note for security is superfluous. So it's our position that if we get that far down the line that these notes were actually being held as security, there's no contrary evidence to that. The law provides that that's a valid way to hold those notes as security, and that we should still be able to sue on those notes as a result of our ownership interest. I see my time is up. Thank you. I look forward to seeing you again on rebuttal. Well, you've used all your time, but I'll allow you two minutes. Oh, I'm sorry. You have to manage your own rebuttal. I'm sorry. Mr. Smyth. Thank you. May it please the Court, Jonathan Smyth of the Godfrey & Kahn Law Firm on behalf of the Appellate Talk Investments, LLC. The District Court's conclusion as a matter of law on summary judgment that the 27 percent transfer obligation was impossible because Talk Investments, LLC didn't own any of its own interest was not erroneous. Similarly, after a bench trial before the District Court, the District Court did not err in concluding that the underlying agreement, the final business terms agreement, included indemnity provisions, which prevented the enforcement of the very notes the plaintiffs were seeking to enforce at the trial. The evidence also at trial was that the plaintiffs did not possess any of the original notes and under both clear UCC statutory authority and Wisconsin common law, they are then in no position to enforce those very same notes. For these reasons, Talk Investments would recommend that the Court affirm the District Court's judgment, and I think a little more context is in order. We didn't hear about a case prior to the filing of this lawsuit, but there was a lawsuit filed in 2012 by these same plaintiffs against Talk Investments, LLC, and that was under the same theory originally asserted in this lawsuit. It was to enforce this 27 percent transfer obligation in the final business terms agreement. The evidence in that case, through discovery that was taken, indicated that days after the notes were made, one of those notes, the $4.4 million note, had been assigned to a third party. On that basis, in the 2012 lawsuit, the District Court concluded that the plaintiffs couldn't deem canceled all of the notes because one, in fact, had been assigned to a third party. And that evidence resulted in dismissal of the first lawsuit, so then two years later this suit was filed. All the documents produced at trial demonstrated that none of the four notes were in the possession of the plaintiffs. Two of them were possessed by one party. A bank had a third, and the fourth was possessed by another bank. And in fact, the $4.4 million note, the records in the case illustrate that it was actually assigned or pledged to two parties at the same time at one point in time. The Court's first finding and summary judgment in this lawsuit, getting back to this case, was that Talk Investments, LLC could not be compelled to transfer that which it did not own. And it is not an issue of whether parties are free to contract in Wisconsin. They certainly are. You'll find no critique of the freedom of contract from the appellee. But there is a notion that equity will not command that which is impossible, and that's well-established in Wisconsin law. That's what the appellants were seeking in this case. They were seeking equity. I think it's impossible, though, under that provision in Delaware law. The District Court focused on Section 706 of the Limited Liability Company Act, which deals with assignments of membership interests. But there's a separate provision that deals with the admission of members. Yes, sir. And I appreciate that, Your Honor, to highlight that. I think it's also notable that the Delaware law, though, says that these are personal property interests, members of an LLC. And the evidence was that there were two members of the LLC, Mahinder Talk and Talk Investments, Inc., and their interests, the District Court reasoned, could not be adversely affected by without they'd be diluted, essentially, if there were new membership interests created. That's true, though, any time a C corporation would issue shares as well. Right? I agree, Your Honor. So, for example, as part of a compensation arrangement. And I think the District Court reasoned that LLCs are more akin to partnerships than corporations in that sense, so it's a little bit different of a setting in the law of corporations as far as issuing new shares, and that these ownership interests would be adversely affected of the two members, that all ownership must equal 100%, and how can they not be diluted had another individual or a company be admitted? Well, they would be diluted. I think you're right to observe that. But the District Court seemed to think it was almost like an unauthorized corporate act. And the only observation I wanted you to react to, which you have, is that it seems like it's expressly contemplated, authorized by the Delaware Code. It is authorized, but, again, not without affecting the membership interests of the other two members, the only two members of the LLC. And even if it were permitted, there would still be factual issues relating to whether all of the four notes were in the possession of the plaintiffs in a fashion where they could even deem them canceled in the first place, as they allegedly did in this lawsuit, which is a separate issue than what the owner is highlighting. But nevertheless, the impossibility defense is a valid defense to specific performance of a contract. We're not talking about enforcement defenses as far as public policy. This is something that the Wisconsin Supreme Court, at least, and we're applying Wisconsin law here in diversity on this issue of specific performance. That's what the Fundal Business Term Agreement says. The Wisconsin law that applies would be a valid defense. And that's what the District Court found, which resulted in an amendment to the complaint and an attempt from saying we deem these notes canceled, which had been the consistent claim for years by the plaintiffs that these are canceled, when, in fact, they actually didn't even possess them, but, nevertheless, they were canceled. Now we're going to enforce those notes, even though they weren't in the possession of the plaintiffs. And the District Court, in looking at this Final Business Terms Agreement, which I think the District Court characterized at various times as bizarre, it's admittedly an unusual agreement. The trial testimony from Mr. Ron Vanden Heuvel was that, and it's worth highlighting for the Court that the sale of the mill in Oconto Falls was a separate transaction from this Final Business Terms Agreement, did not appear on any of the closing documents. This Final Business Terms Agreement was maybe done in parallel, but the parties were different, and it was not part of the closing sheet in the other sale. This was done at the very last minute, and Mr. Vanden Heuvel, if we believe his testimony, and this really isn't the case about credibility. The District Court judge noted that there were different accounts, but because the documents were plain enough, he could decide based on the documents. Mr. Vanden Heuvel's account, though, was that he needed to have certain liens released on the assets of the mill, and that's why these four notes were issued. But this document, according to him, it's not just the District Court saying the business purpose is to relieve the liens from the assets. It's Mr. Vanden Heuvel himself who said that's why he did this, and that's why days later one of them was assigned to one of his creditors, Bill Bain. So there was a reason for it, and the language, if we're going to talk about freedom of contract and the ability to have contracts enforced, there's very plain language in indemnity in the Final Business Terms Agreement. It couldn't be any plainer saying that an effort by the plaintiffs to enforce these notes will result in indemnity, essentially precluding them from the enforcement they sought in this lawsuit and resulting in. Don't you think the reason for that indemnity language is precisely the point you just made? In other words, I want to, I'm not going to hold you responsible for payment on the notes, but I need to get the encumbrances lifted on the notes to transfer clear title on the assets in the underlying deal. So, I mean, we can refer to it like a mystery agreement and all that, but it seems to make commercial sense according to Mr. Vann's testimony. That's correct, Your Honor. Mr. Vann, that was his account of the notes, the purpose they served. And in light of that, there would be indemnity granted. Moving from the issue of the indemnities, which the district court found as a basis to preclude the plaintiffs from enforcing those notes and, in fact, awarding the appellee its fees as a result of the enforcement efforts. The court also found, after the court trial in September 2017, that the plaintiffs were not the holders of the notes, and this is very plain from my reading of the statute, at least, that to enforce a promissory note, one must be a holder in possession of the note, unless it's other circumstances which would not apply here. We hear from the appellants that there's a perfection of security interests under Article 9 of the UCC by possession. Well, that's true enough. But the fact that a security interest exists in the notes is all the more reason to find that the plaintiffs can't enforce them. There's both statutory and common law authorities under Wisconsin law, which state even a secure party has a right to enforce the notes, implying that the pledgeor or the party seeking security or granting security does not. So there's no way around the definition of holder, which says person in possession, that can plausibly be read to suggest that the plaintiffs had the ability to enforce the notes under the UCC and Wisconsin common law. A note is a ratified right of payment, and possession is key to it, and that's certainly what the plaintiffs did not have here. There's no evidence to suggest that they had any possession of the notes at the time they sought to enforce them. All the evidence was to the contrary at trial. And there is a comment by the appellant that there was no endorsement of notes, but actually there were several exhibits admitted at trial which show Mr. Vanden Heuvel signing on one of his various companies, granting security interests or assigning these notes to various third parties, which a writing can accompany a note and still be an endorsement of the note. So these notes were negotiable and they were transferred, they were signed, they were pledged to third parties. As a final basis, should the court find that the district court was in error on any of these other issues, the appellate is of the opinion that the district court should never have granted leave to amend to include the claim of enforcement of these notes that the court found they related back to the original complaint to avoid a statute of limitations issue. But these are two diametrically opposed claims. One is saying the notes are canceled and we're seeking to enforce a specific performance of a final business terms agreement. The other is an effort to seek an enforcement of the notes themselves. The two are at odds and the appellate respectfully suggests the district court erred in concluding to the contrary that the claim of enforcement should be barred under statute of limitations grounds. Unless the court has any questions for me, I'll rest on my briefs. All right. Thank you. As I said, Mr. Ganser, your time has expired, but you may have two minutes. Thank you, Your Honor. Your Honor, I appreciate that very much. It was under the impression that I was only dialed up for what I had originally reserved here. No, I know you reserved it, but we count on counsel to subtract what they reserved. And, Your Honor, I'll be very short. There are just a couple things that were suggested here that I really need to respond to. First of all, the question about dilution of value, that makes no sense. The fact of the matter is this limited liability company received all sorts of value when they received the tissue mill, free of liens, and done. So now they've got that equity, and these notes were purported to represent the value of that equity. They did receive value, and it doesn't dilute any of those shares other than the fact that they did not pay, and therefore they got it for free. So no interest would be diluted unless it works the other way in that they get it for nothing. Secondly, with respect to the agreements, they were all signed the same day. Counsel suggested that they were part of the closing. All of these documents were executed in the same transaction on the same day. Finally, he talks about the relation back argument, and we said this in our brief, and it's true that the original complaint in this lawsuit reflected not just the final business terms agreement but also the notes, and not only did the original complaint refer to them, they were attached as exhibits. So the argument with respect to relation back really is a classic example here of the fact that all of these things were pled, and now for some reason, because there's a potential for statute of limitations issues, what they want to do is they want to say, well, you know, relation back doesn't apply, but it certainly does. It's a classic case. Rule 15C should permit it. Thank you, Your Honor. I appreciate your time. All right. Thanks to both counsel. The case is taken under advisement, and the court will proceed to the third case.